THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH TOWNSEND (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 62321

Opinion filed June 25, 1976.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of armed robbery pursuant to section 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 18—2) and sentenced to a term of 10 to 30 years. On appeal he contends that: (1) the court should have given an instruction on unarmed robbery, and (2) the sentence imposed was excessive.

At trial the following evidence pertinent to this appeal was adduced.
*For the State*
*Timothy De Smet*

On November 29, 1973, at 2:20 a.m. he left work and walked toward the CTA station at Kimball and Belmont Avenues. The area was well lighted. As he crossed Belmont, he was approached by defendant. When they were face to face defendant requested a cigarette. Defendant's right hand came up from underneath his jacket and there was a "sawed-off shotgun" pointed at him. The shotgun had two barrels, one on top of the other, approximately 18 inches long, with tape wrapped around the end of the barrels. Defendant demanded his wallet.

Thereafter, Clinton White approached them from behind and told defendant to "get him in the car." He was pushed over to the back seat of a four door 1963 light blue Plymouth in which a third unidentified man was waiting. Defendant sat down next to him, poked him with the gun and told him to put his hands down. Again, defendant asked for his wallet, however, when he reached for it defendant poked him with the gun, told him not to move his hands, and took the wallet from his pocket. The shotgun was lying on defendant's lap pointed at him. Defendant proceeded to search his pockets, dropping the items he found onto the front seat for White to examine. By this time the car was moving. White, who was driving, turned around, punched him and called him a "honkeyassed square." Some items were returned; others including his payroll check, identification, and Sears charge card were kept. His belt, shoes, and jacket were also taken. They drove a short distance stopping in

an alley. The lighting conditions along the whole route were very good. Defendant and White both warned him to forget everything that happened or they would kill him. White punched him again and then released him. He immediately contacted the police. He also notified Sears that his charge card was stolen.

During cross-examination he estimated the gun to be 16 gauge. Although he had seen shotguns before, he admitted he had never seen a sawed-off shotgun prior to this time. Further, he acknowledged he did not see a handle or trigger mechanism when defendant first confronted him on the street.

*Mary Ann De Rosa*

She is a salesperson in the jewelry department at Sears. Defendant and White attempted to purchase $177.40 worth of jewelry at noon on the day of the robbery using De Smet's charge card. Defendant signed the sales slip "Timothy De Smet." Upon checking the plate number she discovered the card was stolen. She then notified the security department.

*James Contino*

He is a security guard at Sears and also a Chicago Police Officer. Answering a call from Mary Ann De Rosa, he went to the jewelry department and arrested defendant and White for using De Smet's credit card.

*Irving Rubinberg*

He is the manager of the Kedzie-Lawrence Currency Exchange. Defendant cashed De Smet's paycheck for $123.37 at his exchange the morning of the robbery. He filled out a check cashing identification card for future reference and defendant signed it "Timothy De Smet."

*Defendant on his own behalf*

He spent the early morning hours from 11:30 p.m. to 5 a.m. of November 29, 1973, playing cards at 1148 South Springfield with Sherry Pike, Patricia Pike, Rosemary Pike, Charles Godfrey and four other unnamed acquaintances. After the game was over, he lay down to rest. At approximately 8 a.m. Clinton White came along. White was driving a four door 1963 light blue Plymouth. White blew his horn and defendant came down to the car. White asked him to go with him to the currency exchange. When they arrived at the exchange, White gave him a check and asked him to cash it. The check was already endorsed. It was De Smet's payroll check for $123.37. He gave the proceeds to White, keeping $23 for himself. White then suggested that he accompany him to Sears. When they got to Sears, they attempted to buy a watch and ring with De Smet's charge card. However, they were arrested in their attempt to make the purchase. He does not know where or how White obtained De Smet's payroll check, identification and charge card. He is familiar with sawed-off shotguns, having previously owned one. However, at the time of the robbery he did not own a sawed-off shotgun.

At the close of the evidence defendant tendered an instruction on simple robbery which the trial court refused.

## OPINION

■■ Defendant contends there existed a question as to whether the robbery was perpetrated by the use of a dangerous weapon, and therefore, the trial court should have given an instruction on simple robbery. However, based upon the evidence presented, defendant was either guilty of armed robbery or nothing at all. To have instructed the jury as to unarmed robbery or to have permitted them to return a verdict finding defendant guilty of that offense would have been improper. (*People v. Keagle*, 37 Ill. 2d 96, 102, 224 N.E.2d 834, 838; *People v. Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445.) De Smet repeatedly identified the object in question as a sawed-off shotgun. He said he had seen shotguns on previous occasions and even gave an estimate as to the bore size of the gun. Twice during direct examination, he stated he saw the shotgun sitting on defendant's lap the entire time they were in the automobile. This testimony was never refuted.

Defendant asserts that when cross-examined, De Smet admitted seeing only two pipes secured by tape. However, the record discloses that this testimony refers to what was visible to De Smet at the time he was first approached by defendant on the street. His testimony that, later while in the car, he observed a "sawed-off shotgun," "lying on his [defendant's] lap" clearly establishes that the robbery was accomplished with a dangerous weapon. We conclude, therefore, that the trial court properly refused defendant's tendered instruction on unarmed robbery.

■■ Defendant also contends that the sentence is excessive. While this court has the power to reduce a sentence (Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4)) the Supreme Court has held that this power should be exercised with considerable caution. (*People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673.) In mitigation defendant cites his age (19 years old when the offense was committed) and his lack of prior convictions. However, the trial judge who ordinarily is in a better position than is the reviewing court had these facts before him at the hearing on aggravation and mitigation. (*People v. Hampton*, 44 Ill. 2d 41, 253 N.E.2d 385.) Notwithstanding these mitigating factors the factor remains that defendant was a principal in an armed robbery, using a sawed-off shotgun to threaten his victim. Given the nature and circumstances of the offense, we see no reason to reduce the carefully considered sentence imposed by the trial judge.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.